IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**BRIAN WILLIAM YORK**,

        Plaintiff,

   v.

**COLLETTE PETERS, Director, Oregon Department of Corrections, in her individual and official capacities, RICK COURSEY, Superintendent of EOCI, in his individual capacity, DR. JOSEPH H. DIEHL, M.D., at EOCI, in his individual capacity, NURSE-PRACTITIONER MS. SMITH-LEE, at EOCI in her individual capacity, MR. PHELPS, Plumber at EOCI, in his individual capacity, CORRECTIONS OFFICER ENDERSBY, at EOCI, in his individual capacity, CORRECTIONS OFFICER HARRISON, at EOCI, in his individual capacity, CORRECTIONS OFFICER NEWSOM, at EOCI, in his individual capacity**,

        Defendants.

No. 6:13-cv-00676-MO

OPINION AND ORDER

**MOSMAN, J.**,

      Plaintiff Brian W. York, an inmate at Santiam Correctional Institution and formerly at Eastern Oregon Correctional Institution ("EOCI"), asserts Eighth Amendment deliberate indifference claims against Defendants arising from a slip-and-fall incident. Defendants moved [59] for summary judgment. For the reasons that follow, I GRANT Defendants' motion.

1 – OPINION AND ORDER

## BACKGROUND

On November 25, 2011, Mr. York slipped and fell on a wet bathroom floor in his housing unit at EOCI. (Compl. [4] at ¶ 13.) He alleges that a leaking toilet produced a pool of standing water. *Id.* Defendant Matthew Endersby, a correctional officer, heard the fall and asked whether Mr. York required medical attention. (Ofc. Endersby's Decl. [61] at ¶ 5.) According to Officer Endersby, Mr. York declined, while Mr. York recalls saying "I don't know." (*Id.*; Resp. [85] at ¶ 30.) Mr. York walked back to his bunk, reportedly in excruciating pain. (Compl. [4] at ¶ 14.)

Later in the day, Stuart Harrison, another correctional officer, learned that Mr. York wanted to visit Health Services in connection with his slip and fall. (Ofc. Harrison's Decl. [62] at ¶ 6.) Officer Harrison declares that Mr. York told him he was able to walk on his own, while Mr. York recalls saying the opposite. (*Id.* at ¶ 8; Resp. [85] at ¶ 30.) Officer Endersby and a third officer, Newsom,[1] arrived to escort Mr. York to Health Services. (Ofc. Endersby's Decl. [61] at ¶ 7; Compl. [4] at ¶ 16.) According to Mr. York, the officers ordered him to walk despite his complaints of pain. (Compl. [4] at ¶ 16–17.)

At Health Services, Mr. York received an ice pack and a ten-day supply of Tylenol and Ibuprofen. (Dr. Shelton's Decl. [64] at ¶ 6.) He returned numerous times in the following weeks, complaining of pain in his right leg and back. *Id.* at ¶ 7–8. On December 21, 2011, Joseph H. Diehl, M.D., ordered an X-ray of Mr. York's lumbar spine. *Id.* at ¶ 9. On December 27, Donna Smith-Lee, N.P., a radiologist, performed the X-ray. *Id.* at ¶ 10. Mr. York asserts that Nurse Smith-Lee "shoved [him] nearly 18" in his lower back" as he lay on his side on the X-ray table. (Compl. [4] at ¶ 21.) Later, on January 30, 2012, Mr. York again saw Dr. Diehl, this time demanding an MRI. (Dr. Shelton's Decl. [64] at ¶ 12.) Dr. Diehl forwarded Mr. York's X-ray exam results to the Therapeutic Level of Care Committee, who denied the MRI request. *Id.*

---

[1] The parties' submissions do not reveal Officer Newsom's first name.

at ¶¶ 12–13.  Mr. York asserts that Dr. Diehl falsified the X-ray results.  (Compl. [4] at ¶ 38; Resp. [85] at ¶ 12.)  In a later visit, on March 5, 2012, Nurse Smith-Lee diagnosed Mr. York with severe degenerative disc disease and placed him on reduced work duty.  (Dr. Shelton's Decl. [64] at ¶ 16.)

Mr. York alleges that each named defendant violated his right under the Eighth Amendment to freedom from cruel and unusual punishment.  (Compl. [4] at ¶¶ 36–49.)  He asserts that Colette Peters, Director of the Oregon Department of Corrections ("ODOC"), and Rick Coursey, Superintendent of EOCI, "failed to provide [him] a reasonably safe living space." *Id.* at ¶¶ 36–37.  Against Dr. Diehl, Nurse Smith-Lee, and the three correctional officers, he alleges the conduct summarized above.  *Id.* at ¶¶ 38–47.  Finally, he alleges that Tyler Phelps, Assistant Physical Plant Manager at EOCI, showed deliberate indifference in failing to prevent the bathroom floor from becoming wet, and that the three officers failed to post warnings of the floor's wet condition.  *Id.* at ¶¶ 47–48.

## DISCUSSION

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must view the evidence in the light most favorable to the nonmoving party, drawing in his favor all reasonable inferences from the facts.  *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

The moving party bears the initial burden of informing the court of the basis of its motion and providing evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If that burden is met, the nonmoving party must "present significant probative evidence tending to support its claim or defense."  *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (internal quotation omitted).

3 – OPINION AND ORDER

The nonmoving party fails to meet its burden if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

Here, Defendants argue that many of Mr. York's claims, including all asserted against Ms. Peters, are barred by the Eleventh Amendment. They also contend that Mr. York's Eighth Amendment claims against Ms. Peters and Mr. Coursey improperly invoke vicarious liability under 42 U.S.C. § 1983. Finally, Defendants argue that they are entitled to qualified immunity.

## I.    **Eleventh Amendment**

The Eleventh Amendment bars suit in federal court against a state for damages without the state's consent. *Green v. Mansour*, 474 U.S. 64, 68 (1985). This immunity extends to suits against a public officer in her official capacity. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). However, the Eleventh Amendment does not bar suit against state officials in their individual capacities under § 1983, *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991), nor prevent plaintiffs from suing to enjoin conduct that violates the Constitution, *Edelman v. Jordan*, 415 U.S. 651, 664 (1974) (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

In his complaint, Mr. York alleges that Officers Endersby and Harrison were negligent in "failing to inspect the restrooms [and] failing to post any warning signs, caution tape or orange safety cones for water on the floors." (Compl. [4] at ¶ 47.) He alleges further that Mr. Phelps was negligent in "allow[ing] one of the toilets to leak water onto the floor" and "failing to oversee the actual plumbing repairs being performed by unlicensed inmates." *Id.* at ¶ 48. He also alleges that Nurse Smith-Lee battered him. *Id.* at ¶ 42.

Defendants construe Mr. York's complaint as asserting state-law claims for negligence and battery against state officials in the scope of their employment. Accordingly, they argue that

the Eleventh Amendment bars these claims. (Mem. in Supp. [60] at 6.) They also note that Mr. York has sued Ms. Peters in her official capacity, and argue that all of his claims against her are barred. (Mem. in Supp. [60] at 9; Compl. [4] at 1.)

In response, Mr. York makes clear that his allegations of negligence and battery pertain to his Eighth Amendment claims, and that he does not seek to bring any state-law claims. (Resp. [85] at ¶ 61.) For example, he asserts that Nurse Smith-Lee's alleged battery upon him was cruel and unusual punishment. *Id.* He also argues that he sued Ms. Peters in her official capacity only to obtain an injunction requiring that he be given an MRI. *Id.* at ¶ 69.

I take Mr. York at his word. If all of his claims against Defendants in their individual capacities rest on § 1983, then the Eleventh Amendment does not bar them. As to Ms. Peters, Mr. York's argument appears to be that ODOC's failure to provide him with an MRI violates his rights under the Eighth Amendment. If I credit this argument, then the Eleventh Amendment does not prevent me from ordering Ms. Peters to furnish an MRI. The Eleventh Amendment therefore is no obstacle to Mr. York's claims against Defendants.

## II.     Vicarious Liability

Vicarious liability is not recognized in a § 1983 suit. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Mr. York alleged Eighth Amendment violations against Ms. Peters, director of ODOC, and Mr. Coursey, Superintendent of EOCI. (Compl. [1] at ¶¶ 36–37.) He argues that both Defendants knew or should have known of the "plumbing issues" in his housing unit, and nonetheless failed to take action. (Resp. [85] at ¶ 24.a.) With regard to Ms. Peters, he asserts

that she should be charged with knowledge of the leaky toilets because "she and/or her staff" likely receive reports concerning events at EOCI. *Id.* at ¶ 63.b. With regard to Mr. Coursey, he offers EOCI's response to his inmate grievance appeal. *Id.* at ¶ 63. In a letter, Mr. Coursey noted that only two work orders pertaining to leaky toilets were submitted in the months leading up to Mr. York's injury. (Ex. A [85-1] at 1.) Mr. York argues that Mr. Coursey's preparation of this letter is sufficient direct participation to support § 1983 liability. (Resp. [85] at ¶ 63.)

To the contrary, Mr. York has not shown that either Defendant participated personally in the violations he alleges. Even if Ms. Peters's office was likely to receive periodic updates on EOCI's leaky toilets, Mr. York offers no evidence that Ms. Peters ever read any such report. Instead, he suggests that she should be charged with knowledge of a dangerous condition at EOCI if one of "her staff" learned of it. To charge Ms. Peters with an act or omission of one of her agents would be to hold her vicariously liable, which is not permitted in a § 1983 action. Similarly, Mr. Coursey's response to Mr. York's grievance appeal does not amount to personal participation. Mr. Coursey's letter was written on February 29, 2012. At best, it demonstrates that Mr. Coursey learned of the wet bathroom floor some time after Mr. York was injured. It does not demonstrate that he knew of any danger before the injury occurred.

Summary judgment will be granted in favor of Ms. Peters and Mr. Coursey.

### III. Qualified Immunity

The doctrine of qualified immunity shields government officials from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A state official enjoys qualified immunity to suit under § 1983 unless the official violated a constitutional right of the plaintiff that was "clearly established" when the violation occurred.

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation omitted). The court may address either of these prongs before the other at its discretion. *Id.* at 236. Here, because I find that Defendants violated no constitutional right, I need not determine whether any such right was clearly established.

    A.    *Eighth Amendment Violations*

Under the Eighth Amendment, prison officials "must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation omitted). An inmate must prove two elements in order to hold a prison official liable for harm: (1) "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm"; and (2) the official must have harbored "deliberate indifference to inmate health or safety." *Id.* at 833 (internal quotation omitted). The "deliberate indifference" element requires that a prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that he "also dr[e]w the inference." *Id.* at 837. The official must then disregard the risk. *Id.* A prison official is not liable if he responded reasonably, "even if the harm ultimately was not averted." *Id.* at 844.

Mr. York alleges that Mr. Phelps showed deliberate indifference to a substantial risk of harm by allowing the bathroom floor to remain wet long enough for him to slip on it. (Compl. [4] at ¶¶ 48–49.) Similarly, he alleges that Officers Endersby and Harrison contributed to the bathroom's dangerous condition by failing to inspect it or to post warning signs. *Id.* at ¶ 47. He alleges further that Officers Newsom, Harrison, and Endersby showed deliberate indifference to his medical condition by compelling him to walk to Health Services despite knowing that his fall in the bathroom had injured him. *Id.* at ¶ 45. He also alleges that Dr. Diehl and Nurse Smith-Lee were deliberately indifferent in withholding needed medical treatment. *Id.* at ¶¶ 38–41, 43.

### 1.    Slippery Floor

Generally, allegations of the risk of a fall posed by "'slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment." *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993). An exception exists where an inmate's physical limitation, known to prison officials, makes slippery floors especially likely to cause injury. *See Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (distinguishing *LeMaire* because prison guards in *Frost* were aware that the plaintiff frequently slipped and fell due to his reliance on crutches). The Tenth Circuit has developed this line further, concluding that a slip-and-fall hazard does not pose a "substantial risk of serious harm" unless it is "greater than the daily hazards faced by any member of the general public" with a physical condition similar to the plaintiff's. *Reynolds v Powell*, 370 F.3d 1028, 1032 (10th Cir. 2004).

Here, the wet bathroom floor in Mr. York's housing unit did not pose a "substantial risk of serious harm" within the meaning of the Eighth Amendment. Unlike the plaintiff in *Frost*, Mr. York has demonstrated no special susceptibility to slipping and falling of which Defendants had notice. That leaves what the Ninth Circuit rejected in *LeMaire*: a mere slippery floor. As a matter of law in this circuit, without something more, a wet prison floor is not a sufficiently dangerous condition to support a claim of deliberate indifference. Any failure of Mr. Phelps and Officers Endersby and Harrison to keep the bathroom tiles dry therefore did not violate Mr. York's rights under the Eighth Amendment.

### 2.    Deliberate Indifference to Medical Needs

"[D]eliberate indifference to serious medical needs of prisoners" is cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on a medical needs claim, an inmate must show (1) a medical condition so serious that failure to treat it could cause "further significant injury or the unnecessary and wanton infliction of pain," and (2) that the defendant demonstrated deliberate indifference to that condition. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation omitted). Deliberate indifference in turn requires the inmate to establish two elements: "(a) a purposeful act or failure to respond" to an inmate's medical condition, and "(b) harm caused by the indifference." *Id.* Where the defendant acted to treat the inmate, the defendant's chosen course of treatment must have been "medically unacceptable under the circumstances, . . . in conscious disregard of an excessive risk" to the inmate's health. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Mr. York argues that Officers Harrison, Endersby, and Newsom showed deliberate indifference in forcing him to walk to Health Services rather than providing a wheelchair. (Resp. [85] at ¶ 6.) He notes that, in a response to his inmate grievance, Captain D. Heehn told him that EOCI has a policy of providing a wheelchair "where the person being escorted is not able to physically able [sic] to assist themselves in walking." (Ex. I [85-1] at 9.) Mr. York goes on to point out a Post Information Log entry made on the day of his fall, in which Officer Harrison recorded that Mr. York told him "that he could *not* walk to medical." (Resp. [85] at ¶ 9 (quoting Ex. Y [85-1] at 42) (emphasis in original).) Mr. York observes that this entry directly contradicts Officer Harrison's recollection that Mr. York said he was capable of walking without assistance. *Id.*

To the contrary, even if all of Mr. York's assertions are credited as true, he has not shown that the officers were deliberately indifferent to his medical needs. In order to establish

9 – OPINION AND ORDER

deliberate indifference, an inmate must demonstrate that the defendant's act or omission caused harm. *Jett*, 439 F.3d at 1096. Mr. York neither alleges nor presents evidence of any harm resulting from the forced march, apart from pain. (Compl. [4] at ¶ 17; Resp. [85] at ¶ 8.) Nor does he assert that this pain was greater than that caused by the fall. (*Compare* Compl. [4] at ¶ 14 (the fall caused "excruciating pain") *with id.* at ¶ 17 (the forced walk to Health Services caused "excruciating pain").) Mr. York has not raised a genuine dispute concerning whether any harm resulted from the officers' alleged indifference to his injury. The officers' direction that Mr. York walk to Health Services therefore did not violate his Eighth Amendment rights.

As concerns Dr. Diehl, Mr. York refers to a form that the doctor prepared opining that Mr. York's X-ray results did not indicate a need for further treatment, and asserts without further evidence that the form is "false." (Resp. [85] at ¶ 12 (citing Ex. L [85-1] at 16; Ex. Q [85-1] at 22).) With regard to Nurse Smith-Lee, Mr. York argues that she showed deliberate indifference to his medical needs by shoving him in the back while administering his X-ray exam. (Resp. [85] at ¶ 97.h.)

Mr. York has not proven that Dr. Diehl's and Nurse Smith-Lee's conduct was medically unacceptable. First, he presents no evidence to suggest that Dr. Diehl misrepresented the results of his back X-ray. Second, his only argument to suggest that Nurse Smith-Lee disregarded his medical needs is that she shoved him as he lay on the X-ray table. He has not shown that this shove had any other purpose than "positioning him on the x-ray table," a contact to which he impliedly consented by seeking an X-ray. (Nurse Smith-Lee's Decl. [65] at ¶ 6.) Moreover, he presented no evidence that any harm resulted. Mr. York has not raised any genuine question of material fact as to whether Dr. Diehl or Nurse Smith-Lee was deliberately indifferent to his medical needs, and therefore has not established any Eighth Amendment violation.

Mr. York has not carried his burden of demonstrating a genuine dispute of material fact as to whether any Defendant violated his Eighth Amendment rights. Defendants are therefore entitled to qualified immunity.

## CONCLUSION

Mr. York alleges no direct participation by Ms. Peters or Mr. Coursey in the events underlying his claim, and the remaining Defendants are entitled to qualified immunity. Further, because Mr. York has not shown that Defendants furnished constitutionally deficient medical treatment, no injunction is necessary. Defendants' motion for summary judgment [59] is GRANTED.

IT IS SO ORDERED.

DATED this __4th__ day of March, 2014.

        /s/ Michael W. Mosman
        MICHAEL W. MOSMAN
        United States District Judge